## JOHN HANCOCK, Administrator, *vs.* WILLIAM L. CARLTON.

An absolute conveyance of land, "subject to" certain mortgages thereon, which, by the terms of the deed, "are to be assumed and paid by the grantee, his heirs and assigns, the same making part of the consideration," and expressed to be "on the condition" that the grantor and his representatives shall be forever indemnified and saved harmless from the payment of said mortgages, is a grant on condition, and, *prima facie*, forfeited by breach of the condition; and not in the nature of a mortgage from the grantee to the grantor, with a right of redemption for three years after such breach.

The grantee in a deed, made upon condition that he should pay certain mortgages on the land granted, and save his grantor harmless against them, mortgaged back the premises to his grantor to secure the payment of a less sum than the consideration of the deed, subject to said mortgages, with covenants against all other incumbrances, and to save the grantor harmless against those mortgages, and of general warranty; and the grantor was afterwards obliged to pay one of those mortgages, and entered for such breach of condition of his mortgage. *Held,* that this mortgage and the entry under it, without foreclosure, did not extinguish the condition in the deed; nor prevent the grantor from assigning the mortgage to a third person, with or without consideration, and then entering upon the land for breach of the condition of the deed; and that, after such entry, a re-assignment of said mortgage to the grantor, and a transfer thereof by him to another person, would not affect, in favor of the grantee, his entry under the condition in the deed.

A forfeiture, incurred by breach of a condition subsequent in a grant of land, to pay certain mortgages thereon and save the grantor harmless against them, will be relieved against in equity, upon the ground of accident, mistake, fraud or surprise, unless the grantee has been guilty of laches.

When a case in equity is set down for hearing on the defendant's plea, evidence previously taken by the defendant cannot be considered by the court.

A plea, setting up a forfeiture, by breach of a condition subsequent for the payment of money, in bar of a suit in equity for relief, must distinctly aver laches on the part of the plaintiff.

Hancock, Administrator, *v.* Carlton.

Upon a bill in equity to redeem land from a mortgage, this court may incidentally relieve against a forfeiture for breach of a condition subsequent in a deed of the land, pleaded in bar by the defendant.

The effect of ordering a plea to a bill in equity "to stand over till the hearing, saving to the defendant the benefit thereof," is to adjudge the plea to be *prima facie* a bar, leaving the plaintiff, on filing a replication, to prove any circumstances which in equity should preclude the defendant from relying upon it.

An order allowing a bill in equity to be amended upon terms, one of which is that "the plaintiff shall submit an argument in writing in ten days after the amended plea or answer of the defendant shall have been filed, unless the defendant desires to take further evidence, in which case, the argument is to be filed in ten days after the evidence is taken," does not preclude the plaintiff, upon the court's ordering the plea subsequently filed by the defendant to "stand over till the hearing, saving to the defendant the benefit thereof," from filing a replication, and introducing evidence.

BILL IN EQUITY by the administrator of John Hancock, Jr. to redeem an estate on the corner of Court Square and Williams Court in Boston, and known as Massachusetts Block, from a mortgage made by Edmund N. Clark to the defendant on the 12th of December 1846, and conditioned to pay the sum of $31,800 in five years, with semiannual interest, and meanwhile to keep the premises insured, and pay the taxes thereon.

The bill, as originally filed on the 26th of February 1853, set forth only so much of the mortgage as contained the provisions above stated; and then simply averred the entry of the defendant upon the premises, on the 28th of February 1850, for breach of condition of the mortgage, and for the purpose of foreclosure, and his continued possession since; the making by Clark of another mortgage of the same estate to Hancock, on the 9th of February 1847, to secure the payment of $12,000; and the unreasonable neglect of the defendant to render an account; and prayed for permission to redeem, for an account, a discharge of the mortgage, a delivery of possession, and for further relief.

On the 9th of April 1853, the defendant filed a plea in bar, averring that, before the execution and delivery of either of the mortgages set forth in the bill, and upon the 12th of December 1846, the defendant was seised in fee of the premises, and conveyed them by deed to Clark, subject to nine mortgages, (specified in the plea, one of them being to Nathaniel Francis, and the others to different persons, and amounting in all to the sum of $25,639.50 and interest,) and that said deed was upon con-

dition that the defendant, his heirs, executors and administrators should be forever indemnified and held harmless from the payment of the principal or interest of said mortgages, or any part thereof; that, when the mortgages mentioned in the bill were made, Clark had no other title to the premises than under said deed; that Hancock had notice of said condition when he took his mortgage; that afterwards, and before the 23d of May 1850, the defendant was compelled by due process of law to pay the amount of the mortgage to Francis, after notice to Clark and Hancock that such payment had been required, and they had refused to pay the amount; that thereupon the condition of the deed was broken, and the defendant upon said 23d of May entered upon the premises for breach of said condition, and had since held the same; and that Hancock had notice of such entry for such cause.

On the 9th of June 1853, the plaintiff filed a general replication. The defendant, before this suit was commenced, had taken several depositions *in perpetuam*, and at November term 1853, an affidavit, tending to prove the defendant's entry and subsequent possession for breach of condition of the deed, the defendant's payment of the mortgage to Francis, Hancock's knowledge, three years before the mortgage to Francis was paid off by the defendant, that the defendant had been called upon to pay it, and his refusal to do any thing about it.

At March term 1854, a single judge, upon the plaintiff's application, passed the following order : " It is ordered that the plaintiff have liberty to amend his bill, upon the following terms and conditions : 1st. Amendment to be filed on or before April 7th. 2d. The defendant to have liberty to amend his plea, or file an answer, at any time within thirty days from April 7th. 3d. No objection to be taken by the plaintiff to depositions and affidavits already put into the case by the defendant. 4th. The plaintiff to submit an argument in writing, in support of his bill, in ten days after the amended plea or answer of the defendant shall have been filed; unless the defendant desires to take further evidence, in which case the argument is to be filed in ten days after the evidence is taken."

4 *

Pursuant to this order, the plaintiff withdrew his replication, and filed an amended bill, setting forth in full the mortgage from Clark to the defendant, so much of which as is included between the description of the premises by metes and bounds, and the condition of the mortgage, is in these words : " Being the premises on the north side of said Williams Court, conveyed to me by said Carlton by his deed of even date herewith. The premises are conveyed subject to all the several mortgages for the payment of all the several sums of money, which said mortgages and sums are particularly described in said Carlton's said deed to me, and which I, my heirs, executors, administrators and assigns are to pay, satisfy and discharge. To have and to hold the above granted premises to the said Carlton, and his heirs and assigns, to his and their use and behoof forever. And I, the said Clark, for myself and my heirs, executors and administrators, do covenant with the said Carlton and his heirs and assigns, that I am lawfully seised in fee simple of the aforegranted premises ; that they are free from all incumbrances, save the mortgages aforesaid ; that I will, and my heirs, executors and administrators shall, pay and discharge, and save said Carlton, his heirs, executors, administrators and assigns, harmless and indemnified from all the aforesaid mortgages and the sums secured thereby, according to their respective tenor and effect ; that I have good right to sell and convey the same to the said Carlton and his heirs and assigns forever, except as aforesaid ; and that I will, and my heirs, executors and administrators shall warrant and defend the same to the said Carlton and his heirs and assigns forever against the lawful claims and demands of all persons."

The amended bill then averred the seisin in fee of Clark at the time of delivering the mortgage to the defendant ; the making of the second mortgage to Hancock on the 9th of February 1847 ; the entry of the defendant on the 28th of February 1850, for breach of condition of the first mortgage ; his continuance in possession since, and his unreasonable delay to account. It then averred that the deed of the defendant to Clark, referred to in said mortgage, (the consideration expressed in which deed

was $50,000,) after describing the premises, proceeded as follows : " Subject, nevertheless, to my several deeds of mortgage, to wit," [enumerating the several mortgages which were specified in the former plea of the defendant,] " all which said principal sums, with the interest due and to grow due thereon, are to be assumed and paid by said grantee, his heirs and assigns, the same making part of the consideration above expressed ; and this deed is on the condition that I, my heirs, executors and administrators, shall be forever indemnified and saved harmless from payment of said principal sums and interest, or any part thereof."

The amended bill then averred that the defendant pretended that he had been compelled to pay one or more of the sums secured by the mortgages mentioned in the deed from him to Clark ; and pretended that he took possession on the 23d of May, for breach of condition of that deed, and that the estate thereupon revested in him, and the plaintiff lost all right of redeeming ; whereas, the plaintiff averred, the defendant, having accepted the mortgage from Clark, in which Clark covenanted to save the defendant harmless and indemnified from all the mortgages mentioned in the deed from the defendant to him, could not rightfully take possession of the mortgaged premises, under the condition in that deed ; nor, after taking possession for a breach of condition of his mortgage, and while remaining in possession, enter and take possession for a breach of said condition in his deed to Clark.

The amended bill further averred that the defendant sometimes pretended that he was not in possession of the premises on the 23d of May 1850, at the time of his pretended entry for breach of condition of his deed to Clark, but that on the 22d of said May he had assigned the premises and the mortgage of Clark, and the debt secured thereby, to Charles Lane, and that Lane was in possession when the defendant so entered ; whereas, the plaintiff averred, the assignment to Lane was collusive and colorable, and without consideration, and Lane never had any actual possession or control of the premises, but received said assignment for the defendant, and on the 4th of June 1850

re-assigned to the defendant the premises, mortgage and debt; and that the defendant had continued in constant and unbroken possession of the premises, receiving the rents and profits, and been the rightful owner of said mortgage and debt, from the time of his taking possession on the 28th of February 1850, to the time of bringing this suit. And the plaintiff contended that, if the defendant entered for breach of condition of his deed to Clark, the legal forfeiture could not bar the plaintiff, in equity, from redeeming the premises from the mortgage, if he paid also all sums paid by the defendant on account of the mortgages mentioned in the deed from the defendant to Clark, with interest and expenses; the condition in that deed being merely intended to secure the payment of money, and nothing else.

The amended bill then averred that the plaintiff had not, before said 23d of May 1850, nor until a long time after, any notice of said breach, nor of any other breach of condition of said deed; nor had the defendant, at any time, requested the plaintiff to indemnify him against, or save him harmless from, the mortgages mentioned in said condition, or to repay him any sums paid on account of said mortgages; and that the plaintiff, acting as administrator of said Hancock, could not at that time have paid off said mortgages, or any of them.

The amended bill then averred the plaintiff's readiness, and offered to pay to the defendant the amount due to the defendant on Clark's mortgage, and all sums paid by the defendant on account of the debts secured by the mortgages mentioned in his deed to Clark, together with all costs, charges and expenses paid by him, and interest on all sums paid; and to indemnify and save harmless the defendant from the payment of all such sums.

The bill then prayed for a discovery, an account of all such sums, and, upon the plaintiff's paying the same, and indemnifying the defendant as aforesaid, for an assignment of the mortgage and note, a delivery of possession, and for further relief.

The defendant filed a plea to the amended bill, stating, as the only source of Clark's title, the deed of the premises made by the defendant to Clark on the 12th of December 1846, upon the terms, and subject to the conditions recited in the bill;

Hancock's knowledge of the condition of that deed, when he took the second mortgage; that the defendant afterwards, and before the 23d of May 1850, was called upon and compelled to pay the interest upon the mortgages mentioned in the deed from the defendant to Clark, and upon said 23d of May was compelled by other dues of law to pay the amount of the mortgage to Francis; that Clark and Hancock were duly informed that payment of the same was required of the defendant, and were requested by the defendant to pay the same, but neglected and refused to do so, or to indemnify the defendant, and thereupon the condition of the deed from the defendant to Clark became and was broken; that, prior to said 23d of May, the defendant had, in good faith, and for a sufficient consideration, assigned all his interest in the first mortgage to Lane, who, on said 23d of May, was in actual possession of the premises under the assignment, for no colorable or collusive purpose; and that the defendant, on said 23d of May, being actually and in good faith out of possession of the premises, entered upon and took possession thereof for breach of said condition, and had ever since held the same under said entry, and Hancock had notice of such entry for such cause; and the defendant pleaded these proceedings in bar.

The plaintiff set down the case for hearing on this plea; and the arguments upon the sufficiency of the plea were submitted in writing at November term 1854.

*R. Fletcher & S. E. Sewall*, for the plaintiff. Conditions subsequent are not favored in law, and are construed strictly, because they tend to destroy estates. 4 Kent Com. (6th ed.) 129. *Merrifield* v. *Cobleigh*, 4 Cush. 178.

1. The mortgage taken by Carlton from Clark extinguished the condition of Carlton's deed to Clark, both at law and in equity, either when the mortgage was given, or when the estate of Carlton became absolute at law by a breach of the condition of the mortgage. It can scarcely be denied, that if the reconveyance by Clark to Carlton had been absolute, it must have extinguished the condition forever. Shep. Touchst. (Prest. ed., 158. *Grant* v. *Chase*, 17 Mass. 443. Vin. Ab. Extinguishment.

C. pl. 32, 35, 38, 44. Carlton's estate under the mortgage became absolute at law, upon his entry for breach of the condition of the mortgage. The condition was then certainly gone as to the mortgage, and, being so, cannot remain as to the equity of redemption; for a condition is not apportionable by act of the parties. Shep. Touchst. 157, 158. Bac. Ab. Conditions, O. 3.

The condition then being absolutely extinguished at law, equity will certainly not revive it. This case does not rest merely on the uniform unwillingness of courts of equity to enforce such conditions; but the defence has not even the semblance of equity in its favor. Clark's mortgage to Carlton not only expressly declares that the premises are conveyed subject to the mortgages enumerated in Carlton's deed, and which Clark, his heirs and assigns, are to pay—which would of itself bind all persons having Clark's estate in the premises to discharge the previous mortgages—but also contains covenants to indemnify Carlton against said mortgages, and to warrant and defend the premises to him against all lawful claims; which covenants run with the land, (Platt on Cov. 305, 330, 471,) and gave Carlton a right, upon any breach of them, to sue Clark or his personal representatives, and to hold the land under the mortgage, not only as security for the payment of the mortgage debt, but also until Clark should indemnify him against the prior mortgages; and these covenants bound the land in the hands of Clark's assigns. Platt on Cov. 470, 471. *Edwards* v. *Applebee*, 2 Bro. C. C. 652, *note*. *Pye* v. *Daubuz*, 3 Bro. C. C. 595. *Spencer* v. *Boyes*, 4 Ves. 370.

The covenants are as beneficial to Carlton as a condition, inasmuch as they give him the same estate—a fee—which he would acquire by entry for a breach of the condition. In some respects, they are more beneficial, by giving him a right of action against Clark and his heirs personally; and the right to assign the benefit of the covenants; neither of which is the case with a condition. The only imaginable superiority of the condition is that, on a forfeiture, the estate acquired by entry would be absolute and irredeemable. If this were so, it would be an additional reason for enforcing the legal extinguishment of the condition. See *Atkins* v. *Sawyer*, 1 Pick. 357.

2. The condition in Carlton's deed to Clark being merely designed to secure the payment of money, the forfeiture is relievable in equity. 2 Story on Eq. § 1321. *Atkins* v. *Chilson*, 11 Met. 117. *Vernon* v. *Stephens*, 2 P. W. 66. Such relief has been so freely granted in equity, even after great delay, in cases of forfeiture for nonpayment of rent, or of money due under a mortgage, that the time within which such equitable relief might be sought, in those cases, has been limited by statute. 2 Platt on Leases, 475. Rev. Sts. *c.* 107, §§ 13 *& seq.* This case is precisely analogous to that of a mortgage, both in the object of the security—to enforce the payment of money ; and the extent of the estate acquired, at law, upon breach of the condition— the fee in the land ; the grounds for equitable interposition are the same ; and relief has often been granted in such cases as this, even after the heir had recovered the land in ejectment on the ground of the forfeiture. *Wheeler* v. *Whithall*, Freem. Ch. 9. *Barnardiston* v. *Fane*, 2 Vern. 366. *Woodman* v. *Blake*, 2 Vern. 222. *Grimstone* v. *Bruce*, 1 Salk. 156, and 2 Vern. 594. *Underwood* v. *Staney*, 1 Ch. Cas. 77. *Popham* v. *Bampfeild*, 1 Vern. 83. *Walker* v. *Wheeler*, 2 Conn. 299. *Stone* v. *Ellis*, 9 Cush. 103.

These cases are at variance with the idea that, except only in cases of conditions in leases to secure the payment of rent, relief will not be granted in equity against the forfeiture of estates, unless where there is some reasonable cause for not performing the condition, such as accident, where the default is not wilful. Although, when staying proceedings on a writ of entry to enforce a forfeiture for breach of a condition like this, in *Sanborn* v. *Woodman*, 5 Cush. 36, the court remarked that the default in paying the money was not wilful ; yet that was at law, and does not show what effect the court would have allowed, even at law, to delay in repaying the money. The words " wilful breach of a condition " can hardly be applied with propriety to the nonpayment of money ; and no case is to be found in which a court of equity have refused to grant relief against the forfeiture of an estate, on the ground of a wilful default in the payment of money. The ground on which

Hancock, Administrator, *v.* Carlton.

courts of equity refuse such relief in cases of other conditions is, that money cannot exactly measure the injury caused by the breach.

*R. Choate & B. F. Hallett,* for the defendant. 1. The mortgage taken by Carlton, and the entry under it, no foreclosure having been worked, do not, in equity, merge the condition. No doubt the conveyance of the fee would have merged it. But whatever the rights of a mortgagee, entering for a breach, may have been at common law, under the statutes of the commonwealth such entry does not give him an absolute title at law, but a title defeasible upon payment within three years, and cannot merge the condition. *Ritger* v. *Parker,* 8 Cush. 149. And, in equity, the mortgage is mere security, and passes no title; and the mortgagee is allowed to hold his title under the mortgage, distinct and apart from any other title he may have in the same property. A reconveyance, which does not divest the party making it of all interest in the subject matter, cannot merge a condition, but, at most, only place it in abeyance. Shep. Touchst. 158. While Carlton was in under the mortgage, the condition may have been suspended, but revived when he ceased to claim under the mortgage. No apportionment of a condition is here attempted. And the plaintiff's argument upon the covenants in the mortgage would not allow a man to take two securities for the performance of one promise.

2. The established doctrine now is, that in all cases of forfeiture for the breach of any covenant or condition, other than a covenant to pay rent, no relief ought to be granted in equity, unless upon the ground of accident, mistake or surprise, although the breach is capable of a just compensation. *Eaton* v. *Lyon,* 3 Ves. 693. *Hill* v. *Barclay,* 18 Ves. 56. *Bracebridge* v. *Buckley,* 2 Price, 200. *Wadman* v. *Calcraft,* 10 Ves. 67. *Popham* v. *Bampfeild,* 1 Vern. 83. *Dorrington* v. *Jackson,* 1 Vern. 449. Jeremy on Eq. 475. 2 Story on Eq. §§ 1321, 1323. 4 Kent Com. 130. The law in this commonwealth, in a case like this, was long since settled in *Gray* v. *Blanchard,* 8 Pick. 284. Compensation cannot be made in this case; for the condition is not merely to pay money, but to save the defendant harmless from

the payment; and the damage which may have been occasioned to the defendant, by the failure to pay this money when due, cannot well be estimated.

The facts stated in the plea, and those proved by the evidence in the case, show such wilful default and laches on the part of the plaintiff and his intestate, that equity will not interfere. *Sanborn* v. *Woodman*, 5 Cush. 36. *Noyes* v. *Clark*, 7 Paige, 179. 1 Story on Eq. §§ 64 *a*, 200 *a*. *Attwood* v. *Small*, 6 Cl. & Fin. 232, 233. *Beaufort* v. *Neeld*, 12 Cl. & Fin. 286. *Keating* v. *Sparrow*, 1 Ball & Beat. 373. *M'Alpine* v. *Swift*, 1 Ball & Beat. 285. *Watkins* v. *Lloyd*, Hayes & Jones, 832. *Jackson* v. *Saunders*, 2 Dow, 437. *Boynham* v. *Guy's Hospital*, 3 Ves. 295.

*Fletcher & Sewall*, in reply. The reference, in the defendant's argument, to evidence taken in the case, is unwarranted. The replication having been withdrawn, an amended bill filed, and a new plea made to the amended bill, that plea was set down for argument. This was equivalent to a demurrer in a suit at law; and the only question before the court is, whether the plea is good. The provision, in the order of March term 1854, allowing the bill to be amended, that no objection shall be taken by the plaintiff to the depositions and affidavits, means, of course, when they become relevant evidence.

The plea sets up as a defence the entry under the condition in the deed. It does not set up the laches of the plaintiff or his intestate, as a ground for refusing equitable relief. Laches or negligence is not a peremptory bar, but the question whether it exists must depend upon a great variety of circumstances; it is not a fit subject for a plea, but for an answer; and the defendant who relies on it must state, with fullness and accuracy, the circumstances on which he relies; and the plaintiff will then have an opportunity of showing any circumstances in explanation or excuse. Most of the cases cited by the defendant upon the point of negligence touched no question of forfeiture.

The authorities cited by the defendant, to limit the doctrine of equitable relief against forfeitures, do not support, nor even suggest, his distinction between covenants for payment of rent, and other covenants for the payment of money. The condition

in this deed is merely for the payment of money; for even if the defendant had first paid the mortgages, the condition would have required nothing more for his indemnity than repayment of the money and interest, not compensation for incidental inconveniences.

The following opinion was delivered at March term 1855.

DEWEY, J. The plea of the defendant sets up, by way of defence to this bill, that there is no right in equity vested in the plaintiff enabling him to maintain the bill. It alleges that the only title of Edmund N. Clark, under whom the plaintiff claims as second mortgagee, was by virtue of a deed from the defendant to Clark, conveying the estate to him upon a condition subsequent; that the condition was broken, and an entry having been duly made therefor by the grantor, the interest of Clark was wholly defeated, and the defendant restored to his former absolute estate. This deed is fully set forth in the bill, and it sufficiently appears that the title of Clark was under a deed upon condition subsequent; and the plea avers a breach of the condition, and entry for forfeiture.

Such being the case, the further questions are: 1st. What was the effect of the defendant's subsequently taking a mortgage from Clark to himself of the same premises, to secure certain liabilities therein described ? 2d. If the taking of such mortgage did not operate to defeat the condition in the deed from the defendant, and there has been a breach of such condition, and an entry therefor, can there be any relief in equity for such forfeiture ? We are therefore first to inquire whether there was any such merger, resulting from the taking of a mortgage subsequently, as to extinguish the condition in that deed.

It is attempted to establish the affirmative of this proposition, upon the principle that the unity of estates resulting therefrom would extinguish all conditions or servitudes annexed to the original deed. But this position cannot be maintained with reference to the case before us. An absolute deed from Clark to the defendant might have had such effect. But not so as to a mortgage not foreclosed. After a breach of the condition of the mortgage deed, there was yet, by the statute, a right to

redeem such mortgage at any time within three years after the breach, and during that period there would be no such merger. Such merger or unity of estate would only arise when the entire estate had absolutely vested in the defendant, and all right of redemption had been lost. It is not enough that there has been a breach of the condition of a mortgage, so that, in one sense, the equitable estate has become a legal one in the mortgagee, to cause a perfect unity of title in the defendant. This distinction between the character of an estate held in mortgage, after breach, but before foreclosure perfected, and that which arises after all rights of redemption are lost, is one well understood, and has a direct bearing upon the question of merger in the present case. To effect a merger by unity of title, the newly acquired estate must be a permanent estate, not one defeasible. But this mortgage estate was defeasible, and so no merger resulted from having the two estates. *Ritger* v. *Parker*, 8 Cush. 145.

The further inquiry is, whether the condition in Carlton's deed to Clark, being merely to secure the payment of money, the forfeiture is one relievable by the payment of principal and interest due thereon. Many English authorities upon this point were cited by the counsel for the plaintiff, tending to establish this doctrine; though it is obvious that the cases more usually have been those of forfeitures of leasehold interests for the nonpayment of rents.

The plaintiff also relies upon our own case of *Atkins* v. *Chilson*, 11 Met. 112, which was an action at law to enforce the restoration of the possession of certain premises, alleged to be forfeited by nonpayment of rent on the day stipulated; and in which the court ordered all further proceedings to be stayed upon payment of the rent due and interest thereon. The case of *Sanborn* v. *Woodman*, 5 Cush. 36, is more directly to the point that, where the forfeiture is designed to secure the payment of money merely, relief may be given against the forfeiture; and that such relief is not confined to forfeitures occasioned by nonpayment of rent, but is equally applicable to a forfeiture in the case of a deed upon condition subsequent, where the con-

dition is to secure the payment of money merely. The proceed-
ings in that case were however at law in a writ of entry; and
the mode of giving relief was by ordering a stay of proceedings,
upon payment of all sums due, as well interest as principal.

In the present case, the question arises upon a bill in equity
to redeem a mortgage; and the forfeiture of the estate by failure
to perform the condition in a prior deed is set up as a defence
to the bill; and if it exists, and the party cannot be relieved
from it, it is fatal to the bill. In such a case, it seems to us
that this court should at least adopt as liberal principles in
granting relief, as if the proceedings were in the form of an
action at law.

How far, and under what circumstances, courts of equity will
give relief in cases of forfeiture by reason of nonperformance of
a condition subsequent, seems to be a vexed question in the
English courts. Certainly the broad ground of giving relief in
all cases where a forfeiture has been occasioned by the non-
payment of money at the stipulated time, upon an offer to pay
the same and the accruing interest, has not been fully sanc-
tioned. While it is stated in 2 Story on Eq. § 1321, "that
when the forfeiture is merely a security for the nonpayment of
money (as a right of reëntry for nonpayment of rent), then it is
to be treated as a mere security, and in the nature of a penalty,
and accordingly relievable," it is also stated, in § 1323, as the
present general doctrine of the English courts of equity, "that
in all cases of forfeiture for the breach of any covenant, other
than a covenant to pay rent, no relief will be granted in equity
unless upon the ground of accident, mistake, fraud or surprise,
where the breach is capable of compensation." For the author-
ities upon this point see the note to § 1323.

Under what precise limitations this power of relieving against
forfeitures will be exercised by this court in cases within their
jurisdiction, it is unnecessary, in the present position of the case
before us, to decide. In *Atkins* v. *Chilson*, the relief was granted
upon showing the failure to pay arose from mere accident, the
party having tendered the amount two days too early. 11 Met.
112. In *Sanborn* v. *Woodman*, Mr. Justice Wilde, in giving the

opinion of the court, granting the relief, says, " There is no reason to believe that the defendants knowingly and wilfully neglected to pay the interest." 5 Cush. 42.

Whether the present case will fall within those principles under which relief is granted in cases of forfeiture, will be a question for future consideration. In the argument on the part of the defendant, reference is had to certain evidence relied on to show laches and wilful neglect on the part of Clark, and those claiming under him, to perform the condition of the deed to him; but we think that is not properly before us upon the question of the sufficiency of the plea. The question as to the facts will arise at a subsequent stage of the proceedings.

In the view we have taken of this case, the deed given by the defendant to Clark was a deed upon condition subsequent, and if a breach of the condition has occurred, and an entry under it, the estate will revest in the defendant, and of consequence defeat the right of the plaintiff to maintain this bill, unless relievable in equity from the consequences of the forfeiture upon such evidence as shall authorize and require this court thus to interfere But upon this point, we think, the case is not sufficiently before us.

The plea, to operate as a bar to maintaining the present bill, should state more directly and fully the existence of laches on the part of the plaintiff and his intestate, as a ground for refusing relief from the alleged forfeiture. This matter is essential to the issue, and is to be adjudged upon all the facts and circumstances of the case. The proper course will be therefore to rule that the defendant have the benefit of his plea at the hearing; and the entry will be " plea to stand over till the hearing, saving to the defendant the benefit thereof."

It may be proper to remark that this case raises no question of the general jurisdiction of this court as a court of equity to relieve from forfeitures at law, on a bill filed merely for that purpose, or under that specific head of equity; as this bill seeks to redeem an actual outstanding mortgage, and the question of relief from a forfeiture alleged to have arisen from a prior deed arises only collaterally, and as an incidental inquiry. The de-

5 *

fendant denies the right of the plaintiff to redeem at all, and the question is whether the plaintiff can now be relieved from the legal effect of a breach of the condition of that deed, and an entry under it, which are thus set up as a bar to his maintaining this bill. This question, thus incidentally arising, is therefore properly before the court, as was settled in the case of *Holland* v. *Cruft,* 20 Pick. 327. [See also *St.* 1856, *c.* 38.]

> *Plea to stand over till the hearing, saving to the defendant the benefit thereof.*

At November term 1855, the defendant suggested that the effect of this order was only to allow the plaintiff to avoid the plea by evidence of accident, mistake or surprise, and that the order of March 1854 excluded the plaintiff from taking any further evidence ; and therefore moved that the bill be dismissed.

*Choate & G. S. Hale,* for the defendant.

*Sewall,* for the plaintiff.

SHAW, C. J. As this plea covers the whole bill, the effect of the order, that the plea stand over till the hearing, saving to the defendant the benefit thereof, is, that the defendant shall not be deprived of the benefit of his plea ; but that the plaintiff shall be at liberty to file a replication, and proceed to the proof of the facts in reply to the plea ; and on such hearing, the plea is to be taken, *prima facie,* a good bar to the suit ; but as there may possibly be circumstances which, in equity, ought to preclude the defendant from relying upon such plea, the question is left open until such hearing. *Astley* v. *Fountaine,* Cas. temp. Finch, 4. *Cooth* v. *Jackson,* 6 Ves. 18. *Heartt* v. *Corning,* 3 Paige, 572, 573. 2 Dan. Ch. Pract. 799, 800. Welf. Eq. Pl. 308. Story Eq. Pl. § 698. 2 Barb. Ch. Pract. 121.

There is nothing in the order of March term 1854, which affects the plaintiff's rights in this respect. *Motion overruled.*

The plaintiff then filed a general replication ; and the case came on for a hearing before the chief justice, who made the following report thereof :

" Having given notice to the parties, I proceeded to take the proofs, consisting of deeds, documents and the testimony of witnesses.

" The effect and operation of the plea was, by showing the nature and character of the plaintiff's title, to show that his only title was a mortgage from Clark; that Clark held under a deed from Carlton to him, on this condition : ' Subject nevertheless to my several deeds of mortgage,' (enumerating them, amongst which was one to Nathaniel Francis,) ' all which said principal sums, with the interest due and to grow due thereon, are to be assumed and paid by said grantee, his heirs and assigns, the same making part of the consideration above expressed; and this deed is on the condition that I, my heirs, executors and administrators, shall be forever indemnified and saved harmless from payment of said principal sums and interest, or any part thereof.'

" At the same time, Clark gave back a mortgage to Carlton, to secure the payment of $31,800, another part of the said purchase money.

" I consider that these two deeds were separate securities from Clark to Carlton, for different portions of the purchase money to be ultimately paid for the estate, upon which distinct remedies might be had by Carlton. Clark's deed from Carlton was upon a condition subsequent, that Clark, the grantee, his heirs and assigns, should pay off and discharge sundry mortgages, then resting on the estate, amounting to between twenty five and twenty six thousand dollars, as they should become due, and indemnify the grantor from the payment of such mortgage debts and interest, all or the most of which, the grantor, as the maker of such mortgages, and of the personal securities given with them, would still be liable to pay, notwithstanding his alienation of the land to Clark.

" The mortgage back was the mortgage of such conditional estate, to secure the payment of another and distinct sum.

" Such being the title which John Hancock, Jr. the plaintiff's intestate, took of Clark, the effect of the plea was to show that Clark, and through him Hancock, acquired a conditional title,

to be defeated, if he should fail to comply with the condition to pay off the subsisting mortgages, interest and principal, as they should fall due, and save the grantee indemnified and harmless from such payment; that some of these mortgages did fall due; that Clark and Hancock had notice thereof, and did not pay them ; that Carlton, the grantor and the present defendant, was called upon to pay them, and did in fact pay them.

" It was decided by the court, on the argument of the sufficiency of the plea, that the deed from Carlton to Clark was not a mortgage carrying with it a right of redemption for three years from the nonpayment of money, or nonperformance of any other condition ; but was a conditional grant, to be void in case the condition should not be complied with ; and therefore *prima facie*, after such condition broken, would be forfeited and determined ; and such was the estate which Hancock, by his deed of mortgage, took of Clark.

" But inasmuch as, in equity, the nonpayment of money at the precise time fixed may be sometimes explained and excused by circumstances of accident or mistake, the plea was not held absolutely sufficient if any such circumstances should appear, upon the proof of the plea, to show that such noncompliance with the condition of the deed, by the payment of the interest or principal of either of the mortgages mentioned in the said condition, could be explained or excused.

" With these views these proofs were taken. The deed from Carlton to Clark, duly executed, delivered and recorded, with the condition above stated, was proved. The mortgage back, given by Clark to Carlton, for the payment of $31,800 in five years, with semiannual interest, executed and recorded, was duly proved, dated the 12th of December 1846.

" These deeds being on record when Hancock took his mortgage from Clark, it follows that Hancock had notice of them.

" It was proved, to my satisfaction, that after the execution of said conditional deed from Carlton to Clark, interest became due on one or several of the mortgages, to be paid by Clark; that the debt due to Francis on one of said mortgages became

due ; that a suit thereon was commenced against Carlton in the county of Middlesex at April term 1850 of the court of common pleas, judgment was recovered and execution issued, and that Carlton was obliged to pay and satisfy the same; so that Clark, the grantee, failed to pay and take up the said mortgages, and to indemnify Carlton. Nor did it appear in evidence that said Clark, or said Hancock, or any person in behalf of or claiming through or under Clark, holding by the said deed, has ever paid the said mortgages, or any one of them.

" I am satisfied therefore, by the evidence, that all the material facts set forth in the plea were true, and are well proved.

" Nor does it appear that either Clark or Hancock was prevented from complying with the condition contained in the deed of Carlton to Clark, by the payment of the interest or principal due on the said mortgage, through any fraud, accident or mistake.

" Both Clark and Hancock had constructive notice of the existence of said mortgages, the persons to whom they were due, the amount due, and the times therein respectively fixed for the payment of interest and principal, because they were enumerated in the deed under which they claimed. It was further proved that Hancock, in his lifetime, had actual notice that some of these mortgages had become due, and were unpaid, and that Carlton relied on the condition of his deed for their payment; but no step was taken by him in his lifetime.

" Personal notice came to the plaintiff, as administrator, of the nonpayment of these mortgages, when he received notice of the depositions on the 12th day of September 1850. No payment or offer of payment was ever made by him of either of these mortgages, until the commencement of this suit to redeem, on the 26th day of February 1853; and then an offer was made to redeem by the payment of such sum as on an account taken should be found to be due.

" The ground relied on to take this case out of the direct operation of the condition, on the ground that, in equity, performance at the day was not necessary, was a mistake of the law by Hancock, namely, that he took the deed of Clark under

a mistaken belief that, in law, such a condition, being substantially a condition for securing the payment of money, though contained in the condition of a deed from grantor to grantee, in favor of the grantor, was yet a security, in the nature of a mortgage, and that he would have the term of three years, from the time of condition broken, to redeem.

" It was testified by George L. Hancock, brother of the said John Hancock, Jr., who himself had studied law and been admitted to the bar in another state, that he, George L. Hancock, was of opinion that such a deed on condition was in the nature of a mortgage, and that Clark and his assigns would have three years from the time of condition broken to redeem.

" But I was of opinion that this mistaken opinion, in regard to the nature and character of his own title, if it existed, being an opinion of his own rights, which was strongly pressed upon the consideration of the court in the former argument upon the sufficiency of the plea, was not such a mistake as could be relieved against in equity. It was not an accident or mistake caused, or in any way promoted, by the defendant. He took an invalid title, he has contended for the correctness of it to the end, and it has been decided against him. The defendant cannot be restored to his legal rights by any payment of money, which can now be made.

" On the contrary, the effect of that mistake has been that, from about 1849 or 1850 to the present time, the defendant has been obliged to pay a large amount which the plaintiff or his intestate ought to have paid; and, instead of the plaintiff's paying and taking up said mortgages as they fell due, and saving the defendant harmless, the defendant has been exposed to all the cost, hazard and expense of paying or providing for them.

" I am therefore of opinion that there are no equitable considerations, arising out of the circumstances in which the parties were respectively placed, to prevent the defendant from having the full benefit of the plea, founded on the breach of the condition of his deed to Clark, and the avoidance of the title of the plaintiff, claimed under it.

" Supposing a mere mistake of the law, on the part of Han-

cock, in regard to the nature and character of his title, not caused by any act or omission of the defendant, to be such a mistake as a court of equity will relieve against merely on the ground of mistake, then the evidence shows great laches on the part of the plaintiff and his intestate, inasmuch as no performance of the condition has ever been made or offered to the present time, except by the bill.

" A question arose, whether, on this issue, the defendant, in order to defeat the right of this plaintiff, was bound to show that he entered on the premises after the breach of the condition of his deed to Clark, in order to revest in himself the estate granted by that deed; and, if so, whether the defendant had entered, or done acts equivalent to such entry.

" My impression is, that this question as to the sufficiency of the entry was considered and decided in the former opinion.

" In order to consider this point, it becomes necessary to state the following facts : The fact must be kept in mind that the mortgage to secure the payment of $31,800, and the deed given by Carlton to Clark, on condition to pay the other mortgages and indemnify the grantor, were distinct, and did not work a merger. Carlton therefore was mortgagee, and had a right to enter for condition broken. In point of fact, the condition of the mortgage was broken by the nonpayment of interest due on the mortgage notes, whereupon Carlton, as mortgagee, entered and took actual possession of the premises on the 28th of February 1850.

" Such was the state of the premises when some of the mortgages, principal or interest, fell due, the nonpayment of which constituted a breach of the condition of the deed from Carlton to Clark.

" Carlton being in the legal and actual possession of the premises when the breach of his conditional deed to Clark took place, he could not, strictly speaking, enter upon himself; and it may perhaps be held that any manifestation of his intention to hold for such breach of condition would be sufficient, and as it was manifestly for his interest so to do, having in truth no other security for about $26,000, part of the purchase money,

it may be presumed, in the absence of other proof, that he did so intend.

" But in point of fact he did make a formal entry, under the following circumstances : One of the mortgages having become due, and a suit commenced and judgment entered upon it against Carlton, he satisfied it. This being manifestly a breach of the condition, he took measures to avail himself of it by a formal entry. For this purpose, on or about the 22d of May 1850, he made an assignment of the mortgage given by Clark to him, for $31,800, to one Charles Lane, in due form of law. Inasmuch as he held these two securities as distinct, and to some extent independent, this assignment vested in Lane the mortgage in fee, which Carlton so held, and made Lane a good tenant to the freehold, he himself remaining entitled to the benefit of the condition in his deed to Clark. Such being the relation of the parties, Carlton, for the breach of the condition of his deed to Clark, in not paying the mortgages and indemnifying him, made a formal entry upon Lane, for the purpose of revesting the estate in himself, according to the condition in his deed to Clark. This was done in presence of two witnesses, who made a certificate thereof, which certificate was duly acknowledged. This was, in my judgment, a good and valid entry to revest the estate in him as grantor.

" Evidence was offered on the part of the plaintiff that this assignment of the mortgage from Carlton to Lane was colorable and collusive ; that in fact no pecuniary or other valuable consideration was given for it by Lane ; and that without pecuniary or valuable consideration, in a few days after, Lane re-assigned Clark's notes and mortgage to Carlton.

" But I was of opinion that such evidence was immaterial, because the facts, if proved, would not affect the validity of this entry ; that, so far as the assignor and assignee, Carlton and Lane, were concerned, the execution and delivery of this assignment, duly acknowledged and recorded, were good, as between them, to transfer the freehold, whether any pecuniary or other adequate consideration was paid for it or not ; that its validity could not be impeached by a stranger, or other person, not

being a creditor, or otherwise so situated as to be deprived of any right by it; that Carlton had a legal right to assign his mortgage, retaining his interest in the condition; and that Lane was a legal tenant to the freehold, and the entry available under the breach of condition to revest the estate in Carlton.

" Perhaps the same thing might have been done by notice to parties interested, that, being already in lawful possession of the freehold, he should henceforth hold for breach of condition; but, though another course, equally available, might have been adopted, yet the method actually adopted was sufficient, the only purpose being to make an actual and formal entry on one for the time being holding a freehold; inasmuch as it was hi*v* vested right, on the breach of condition, to enter on the estate for such breach, whether with the assent of the conditional grantee and his assigns or not.

" Another ground taken by the learned counsel for the plaintiff is, that by the mortgage deed taken by Carlton of Clark, simultaneously with, though, in order of operation, after the conditional conveyance from Carlton to Clark, the mortgagee took covenants of Clark, expressly covenanting that the premises were free of all incumbrances, and that, either as a security of a higher nature, or as a waiver, or in some form, these covenants vacated, annulled or superseded the conditions contained in the first deed from Carlton to Clark, making the deed defeasible upon the nonperformance of the condition to take up the outstanding mortgages and indemnify the grantor.

" It appears to me that there is no ground on which this position can be established. It is quite manifest that such could not be the intent of the parties; but that, on the contrary, it would defeat the purpose of the parties, to give it that construction. The two instruments were obviously made *diverso intuitu;* the one as the security for discharging the outstanding mortgages and for the indemnity of the grantor, to the amount of about $26,000; and the other to secure to Carlton the payment of a further sum of $31,800. By giving each its full effect, the entire purpose of the parties would be accomplished. And such, I think, is the legal operation of the two instruments.

" The covenants in the mortgage deed could only be co-extensive with the estate granted in that deed. Then what was the estate thus conveyed ? Obviously the same conditional estate mortgaged back by Clark, which Carlton had just made to Clark by a deed of the same date ; it was the estate, subject to the condition of taking up and cancelling the outstanding and enumerated mortgages. Of course, the covenant was against any other incumbrances which might impair the mortgage title, other than those which, by the operation of the conditional deed, when performed, would be extinguished and removed. Indeed the mortgaged premises, against incumbrances on which this covenant was intended to secure the mortgagee, consisted of the conditional estate, which of itself had provided for taking up these mortgages at his own charge ; of course, they did not constitute incumbrances on the premises.

" Again, as a test to determine whether the covenants in the mortgage deed contemplated the same incumbrances mentioned in the conditional deed, suppose the mortgage should be fully paid before any breach of the condition, so that the incumbrances, intended to be removed by the condition, should still remain outstanding, would these covenants in the mortgage deed afford Carlton a remedy for failure to take up those other enumerated mortgages ? Clearly, I think, not. There would either be no formal breach of such covenants, or, if there were a literal breach, it would be compensated by nominal damages.

" Carlton's interest in the condition to secure the discharge of the incumbrances was a security binding upon the estate, into whose hands soever it might come ; whereas the covenants in the mortgage would be merely personal, binding Clark to Carlton and his personal representatives only. So far from being a higher security, it would be a much feebler security. But being separate securities for separate parts of this large purchase, each may have its full, proper and legal effect ; the conditional estate in the land, to secure the indemnity against the outstanding mortgages ; and the covenants, to secure from other incumbrances the conditional estate pledged for the payment of the mortgage money.

" 3. Supposing Carlton should assign his notes and mortgage immediately after they were made, as he might, the covenants would pass with it, and especially the covenant of warranty, on which he must mainly rely if he could not hold the land by force of the condition, would pass to the assignee, and of course afford him no remedy. On recurring to the deed, I find that in Clark's mortgage deed to Carlton the specific covenant against incumbrances excepts the ' mortgages aforesaid.'

" It appears to me therefore very clear that the covenants contained in the mortgage were not intended, and cannot legally operate, to deprive Carlton of his right to his real security on the land created by the condition in question.

" Another ground taken by the counsel is, that at a later period, in May 1853, Carlton assigned his mortgage to Benjamin B. Mussey, thereby showing that he himself considered his mortgage as still subsisting.

" Be it so ; I do not perceive that that affects any question in this case. The mortgage was separate and distinct from his other interest in the estate, and must remain so till redeemed or foreclosed. His entry under his conditional deed, and his entry under the mortgage, were entries for the breaches of different conditions, and did not work a merger. So it was decided in the former hearing. This fact therefore, though it be as stated, has no bearing upon the result of this case.

" The result is, that the plea is proved and is a good bar to the plaintiff's right to redeem, and that the bill for that purpose cannot be maintained."

Exceptions were taken by the plaintiff to the opinion of the chief justice, that the assignment of the mortgage by the defendant to Mussey was not a waiver of the breach of the condition in Carlton's deed to Clark ; and were argued at this term by *Sewall,* for the plaintiff, and *Hale,* for the defendant ; and

*Overruled by the full court.*